UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
EMPLOYERS INSURANCE OF WAUSAU and   :       Civil Action No. 06-cv-1602 (MBM)
NATIONAL CASUALTY COMPANY,         :
        :
        Plaintiffs,       :
        :
       - against -       :
        :
FOX ENTERTAINMENT GROUP, INC.;   :
TWENTIETH CENTURY FOX FILM      :
CORPORATION; and TWENTIETH       :
CENTURY FOX INTERNATIONAL       :
TELEVISION, INC.,           :
        :
       Defendants.     :
------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS, STAY, OR TRANSFER

Randy Paar (RP-5106)
Andrew N. Bourne (AB-9774)

DICKSTEIN SHAPIRO MORIN
   & OSHINSKY LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 835-1400
Fax: (212) 997-9880

*Attorneys for Defendants*
FOX ENTERTAINMENT GROUP, INC.,
TWENTIETH CENTURY FOX FILM
CORPORATION, and TWENTIETH CENTURY
FOX INTERNATIONAL TELEVISION, INC.

Of Counsel:
    Kirk Pasich, Esq.

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................. iii

INTRODUCTION ............................................................................................................ 1

STATEMENT OF THE FACTS ...................................................................................... 2

         1.    Plaintiff Insurers ................................................................................... 2

         2.    The Insurance Policies at Issue ............................................................ 3

         3.    New World Entities ............................................................................... 4

         4.    The Underlying California Action ........................................................ 5

         5.    Notice ................................................................................................... 6

         6.    The Insurance Coverage Dispute ......................................................... 6

               a.    The New York Action ............................................................. 6

               b.    The California Coverage Action .............................................. 7

ARGUMENT .................................................................................................................. 8

I.    THIS COURT SHOULD TRANSFER THIS ACTION TO THE UNITED
    STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF
    CALIFORNIA ....................................................................................................... 8

    A.    The New York Action Could Have Been Brought In The Central District
         Of California ......................................................................................... 8

    B.    The Balance Of Convenience And Interests Of Justice Weigh In Favor Of
         Transferring This Case To The Central District Of California ............................. 9

         1.    The Convenience of the Witnesses Is Better Served in California ............. 9

         2.    Transfer to California Would Improve the Convenience to the
            Parties ................................................................................................... 10

         3.    The Documents Generally Are Located in California ............................. 10

         4.    The Locus of Operative Events Took Place in California ....................... 11

         5.    The Insurers' Choice of Forum Is Entitled to No Deference ................... 11

         6.    The Forum's Familiarity with the Governing Law .................................. 12

7.      Judicial Economy and the Interests of Justice .......................................... 13

C.      The First-Filed Rule Does Not Apply In This Situation, Where Plaintiffs
        Filed An Anticipatory Declaratory Judgment Action In An Attempt To Tie
        This Case To An Illogical Forum ........................................................................ 14

II.     THIS COURT SHOULD ABSTAIN FROM PROCEEDING WITH THIS
        ACTION AND SHOULD DISMISS OR STAY THE ACTION ..................................... 16

A.      Standard For Abstention ..................................................................................... 16

B.      Courts Typically Abstain From Hearing Federal Declaratory Judgment
        Actions Brought By Insurance Companies In Favor Of State Court
        Actions ................................................................................................................. 17

C.      An Application Of The *Brillhart-Wilton* Factors Demonstrates That This
        Court Should Abstain From Hearing This Declaratory Judgment Action............ 19

        1.      Scope and Nature of the State Court Proceeding (Commonality of
                Issues) ..................................................................................................... 19

        2.      Adjudication Of All Issues In Parallel State Proceeding .......................... 20

        3.      Whether Necessary Parties Have Been Joined ........................................ 22

        4.      Amenability To Process ........................................................................... 23

        5.      Avoiding Duplicative Or Piecemeal Proceedings..................................... 23

        6.      Avoidance Of Forum Shopping ................................................................ 23

        7.      Relative Convenience Of The Fora........................................................... 24

        8.      Order Of Filing ......................................................................................... 24

        9.      Choice Of Law.......................................................................................... 25

III.    NO CASE OR CONTROVERSY EXISTS BETWEEN THE INSURERS AND
        FOX ENTERTAINMENT, AND, THEREFORE, THE CLAIM AGAINST FOX
        ENTERTAINMENT SHOULD BE DISMISSED ........................................................ 25

CONCLUSION................................................................................................................. 26

DOCSNY.185892.3

# TABLE OF AUTHORITIES

Page(s)

Cases:

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652 (S.D.N.Y. 1997) ............................... 20

*Am. Home Assurance Co. v. Merck & Co.*, 329 F. Supp. 2d 436 (S.D.N.Y. 2004) ...................... 12

*Am. Motorists Ins. Co. v. Glidden Co.*, 129 F. Supp. 2d 640 (S.D.N.Y. 2001) ............... 13, 19, 21

*Arizona v. San Carlos Apache Tribe*, 463 U.S. 545 (1983) ........................................................ 23

*Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York*,
    762 F.2d 205 (2d Cir. 1985) ................................................................................................. 23

*Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414 (2d Cir. 2001) .................................................... 12

*Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942) ................................................. 16, 17, 19

*Chi. Ins. Co. v. Holzer*, No. 00 Civ. 1062(SAS), 2000 WL 777907
    (S.D.N.Y. June 16, 2000) ...................................................................................................... 14

*Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F. Supp. 2d 268
    (S.D.N.Y. 2000) ................................................................................................. 13, 18, 21, 24

*Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734 (2d Cir. 1992) ........................................... 25

*Continental Insurance Cos. v. Wickes Cos.*, No. 90 CIV. 8215 (KMW),
    1991 WL 183771 (S.D.N.Y. Sept. 6, 1991) .................................................................... 14, 15

*Employers Ins. of Wausau v. El Paso Tenn. Pipeline Co.*, No. 98 Civ. 4612(JSR),
    1998 WL 790937 (S.D.N.Y. Nov. 13, 1998) ............................................................... 19, 23-24

*Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978) ............................................... 14

*Fed. Ins. Co. v. Safeskin Corp.*, No. 98 Civ. 2194(DC), 1998 WL 832706
    (S.D.N.Y. Nov. 25, 1998) ............................................................................................ 19, 20, 24

*Fireman's Fund Ins. Co. v. Chris-Craft Indus., Inc.*, 932 F. Supp. 618
    (S.D.N.Y. 1996) ............................................................................................................ 19, 20, 21

*Fireman's Fund Ins. Co. v. Schuster Films, Inc.*, 811 F. Supp. 978 (S.D.N.Y. 1993) ................. 12

*Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, Nos. 01 Civ. 11379, 11380, 11520,
    11521, 2002 WL 850012 (S.D.N.Y. May 3, 2002), *aff'd*, 57 F. App'x 892
    (2d Cir. 2003) ......................................................................................................................... 19

*Gotham Ins. Co. v. Plant Maint. Serv. Co.*, No. 94 Civ. 1461 (WK), 1994 WL 714302
    (S.D.N.Y. Dec. 22, 1994) ....................................................................................................... 15

iii

*Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282 (S.D.N.Y. 2004) .................. 9, 10, 11

*Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, No. 05CIV2564 (PKL),
2005 WL 1994017 (S.D.N.Y. Aug. 17, 2005) ...................................................... 11

*Ins. Co. of N. Am. v. S/S Ro Ro Genova*, 661 F. Supp. 1578 (S.D.N.Y. 1987)............................ 13

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ........................................ 12

*Konover Construction Corp. v. Royal Indemnity Co.*, 399 F. Supp. 2d 130
(D. Conn. 2005) ................................................................................ 22

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turbi de Angustia*, No. 05 Civ.
2068(DLC), 2005 WL 2044930 (S.D.N.Y. Aug. 23, 2005) .................................. 19

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, No. 00 Civ.
5007(NRB), 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001).................................. 19, 20, 21, 24

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17 (2d Cir. 1997) ............... 18, 19

*National Union Fire Insurance Co. of Pittsburgh, PA v. BP Amoco P.L.C.*,
319 F. Supp. 2d 352 (S.D.N.Y. 2004)....................................................... 25

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41 (2d Cir. 1996) ..................................... 22

*Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391 (S.D.N.Y. 2004)........................ 8, 11

*Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.,* No. 94 Civ. 6971 (SS), 1996 WL 61763
(S.D.N.Y. Feb. 13, 1996)................................................................... 19, 20

*Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02 Civ. 2612 (PKL), 2002 WL
31385815 (S.D.N.Y. Oct. 22, 2002) ........................................................ 10, 12

*Security Insurance Co. of Hartford v. ITA Textiles Corp.*, No. 99 Civ. 10942 (MBM),
2000 WL 1576879 (S.D.N.Y. Oct. 23, 2000) ................................................ 15

*Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*, No. 02 Civ. 9800(WHP),
2004 WL 193564 (S.D.N.Y. Feb. 3, 2004).................................................... 19

*Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995) ......................................... 16, 17, 24

*Winterthur International America Insurance Co. v. Pepsico, Inc.*, No. 01 Civ. 9132
(WK), 2002 WL 986566 (S.D.N.Y. May 13, 2002) ........................................... 18

*Wyndham Assocs. v. Bintliff*, 398 F.2d 614 (2d Cir. 1968)........................................ 13


Statutes:

28 U.S.C. § 1391(a)(2)...................................................................... 9

DOCSNY.185892.3

28 U.S.C. § 1404(a) ............................................................................................... 2, 8, 9, 26

28 U.S.C. § 2201 .......................................................................................................... 25

Article III, Section 2 of the U.S. Constitution ............................................................. 25

Federal Rule of Civil Procedure 12(b)(3) .................................................................... 26

Federal Rule of Civil Procedure 19(a) ......................................................................... 22

DOCSNY.185892.3

Defendants Fox Entertainment Group, Inc., Twentieth Century Fox Film Corporation, and Twentieth Century Fox International Television, Inc., through their underlying counsel Dickstein Shapiro Morin & Oshinsky LLP, respectfully submit this Memorandum of Law in Support of Their Motion to Dismiss, Stay, or Transfer.

## INTRODUCTION

Two days prior to denying coverage, Employers Insurance of Wausau ("Wausau") and National Casualty Company ("National Casualty") (collectively the "Plaintiff Insurers") commenced the instant action seeking a declaration regarding their obligations to defend and indemnify Defendants with respect to a class action presently being litigated in California ("Underlying California Action"). The Underlying California Action alleges that two of the Defendants, along with two other corporations not joined in this action but insured under Plaintiff Insurers' policies, infringed the copyrights held by members of the class when certain musical compositions and/or musical recordings were used in the television program *Santa Barbara* without permission.

This coverage action, which does not involve all interested parties, has no connection with New York and should not be litigated in this Court. It involves Wisconsin insurers that sold insurance policies to Named Insureds in Colorado and Georgia. The policies cover claims of copyright infringement alleged against two subsidiaries of the Named Insureds, who produced the television program *Santa Barbara* in California. California is where the alleged infringing acts occurred, where the underlying infringement claims are pending, where relevant documents are located, and where third-party witnesses reside. Notice to the Plaintiff Insurers was given by Defendants' Risk Manager in California to Plaintiff Insurers' designated agent for claims handling in Kansas City, Kansas. Most significantly, a coverage action against Plaintiff Insurers, involving the same policies and *all* of the interested parties, already is pending in Superior Court,

California (the "California Coverage Action"). Unlike the instant action, the California Coverage Action involves the New World entities who produced *Santa Barbara*, who are defendants in the Underlying California Action as well as insureds under Plaintiff Insurers' policies.

As shown more fully below, this case should be transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a), where all parties with an interest in this dispute can be joined. If this action is not transferred to California, it should be dismissed or stayed under the abstention doctrine in favor of the California Coverage Action pending in state court. Finally, the claim against Fox Entertainment Group, Inc. should be dismissed, because that entity does not seek insurance under Plaintiff Insurers' Policies.

## STATEMENT OF THE FACTS

### 1.    Plaintiff Insurers

Plaintiff Insurers sold Media Special Perils Policies designed to insure against claims of copyright infringement which arise out of, *inter alia*, television productions. The basic coverage provisions of the Media Special Perils Policies provide:

> The Company shall pay on behalf of the **Insured** all **damages** and **claim expense** in excess of the Self-Insured Retention and within the Policy Limit which the **Insured** becomes legally obligated to pay because of liability imposed by law or **assumed under contract** as a result of one or more **claims** arising out of:
>
> *    *    *
>
> 1.    any form of defamation or other tort related to disparagement or harm to the character, reputation or feelings of any person or organization, including libel, slander, product disparagement, trade libel, infliction of emotional distress, outrage or outrageous conduct;
>
> 2.    any form of invasion, infringement or interference with rights of privacy or publicity, including false light, public disclosure of private facts, intrusion and commercial appropriation of name or likeness;

2

      3.       infringement of title, slogan, trademark, trade name, trade dress, service mark or service name;

      4.       infringement of copyright, plagiarism, piracy or misappropriation of ideas under implied contract;

      5.       **unfair competition** but only when alleged in conjunction with the types of **claims** named in 3 and 4 above;

committed in the utterance or dissemination of **matter** by or with permission of the **Insured** during the Policy Period in **multimedia activities** and related **advertising**, regardless of when **claim** is made or suit is brought.

Kender Decl., Exs. C, D, E.[1]  Wausau is incorporated in Wisconsin with its principal place of business in Wisconsin.  *See* Compl. ¶ 11.  National Casualty is incorporated in Wisconsin with its principal place of business in Arizona.  *Id.* ¶ 10.

## 2.  The Insurance Policies at Issue

Plaintiffs sold five consecutive Media Special Perils Policies that are at issue in this litigation.  Wausau sold the earliest policy, number LSW001210, to SCI Television Inc. ("SCI") for the period October 29, 1992 to October 29, 1993.  *See* Kender Decl., Ex. A.  The policy listed the address of SCI as 555 17th Street, Suite 3300, Denver, Colorado.  *Id.*  Policy LSW001210, and all subsequent policies at issue in this lawsuit, provide that all notices and inquiries must be addressed to the Plaintiff Insurers' agent at Media/Professional Insurance, 2300 Main Street, Suite 800, Kansas City, Missouri.  ("MediaPro").  *Id.*  The following year, Wausau sold a renewal policy, LSW003741, to SCI for the period November 29, 1993 to February 28, 1995.[2] *See* Kender Decl., Ex. B.  SCI appears to have moved during the previous year.  *Id.*  Its address is listed in the renewal policy as 3200 Windy Hill Road, Suite 1100 West, Marietta, Georgia.  *Id.*

---

[1] "Kender Decl." refers to Declaration of Randall F. Kender dated March 28, 2006.

[2] Defendants have only the declaration pages for the two Wausau policies.  Discovery will likely show that LSW001210 was extended from October 29 to November 29, 1993, by endorsement.

National Casualty sold Media Special Perils Policy LS002108 to the Andrews Group for the period February 28, 1995 to February 28, 1996. Policy LS002108 renews the previous Wausau Policy LSW003741. *See* Kender Decl., Ex. C. The address of the Andrews Group is the same as the last address for SCI: 3200 Windy Hill Road, Suite 1100 West, Marietta, Georgia. *Id.* Endorsement 1 provides that all predecessors, successors, subsidiaries, divisions, or associations of the Andrews Group are Named Insureds. *Id.* Endorsements 8-11 explicitly list New World Entertainment as an insured. *Id.*

National Casualty Policy LS004947, covering the period February 28, 1996 to July 1, 1996, is a renewal of LS002108. *See* Kender Decl., Ex. D. This 1996 Policy contains a notice for Claims Reporting Procedures that references regulatory guidelines of the California Insurance Department. *Id.* National Casualty Policy LS005451, for the period July 1, 1996 to July 1, 1997, renewed LS004947. *See* Kender Decl., Ex. E. As with the previous policies, the address of the Named Insured, the Andrews Group, is, again, 3200 Windy Hill Road, Suite 1100 West, Marietta, Georgia. *Id.* This last Policy also contains a notice of Claim Reporting Procedures, which references the guidelines for the handling of claims established by the California Insurance Department. *Id.*

### 3.    New World Entities

Among the entities covered by Plaintiffs' policies were New World Television Productions, Inc., a California corporation, and New World Entertainment, Ltd., a Delaware corporation (collectively, "New World Entities"). *See* Kender Decl. ¶ 8. Both New World Entities were involved in the production of television shows and had their principal place of business in Los Angeles, California. *Id.* at ¶ 9. Both were involved in the production of *Santa Barbara*, which was made in Los Angeles. In 1997, Fox Acquisition Co., a corporate affiliate of the Defendants, purchased 100% of the stock of New World Communications Group,

Incorporated, which include all stock in its wholly-owned subsidiaries, New World

Entertainment and New World Television, both of which currently have their offices at 10201

West Pico Boulevard, Los Angeles, California.  *Id.* at ¶¶ 9-10.

### 4.    **The Underlying California Action**

On July 6, 2004, Plaintiffs Nathan East and Stanley Clarke, brought the Underlying

California Action on behalf of themselves and all others similarly situated, entitled *Nathan East,*

*individually and doing business as New East Music, et al., v. Twentieth Century Fox Film Corp.,*

*et al.*, Case Number CV-4-4920, (C.D. Cal.), alleging that musical works in which class

members owned the copyright were used in one or more episodes of *Santa Barbara* allegedly

without obtaining the proper licenses.  *See* Kender Decl., Ex. F.  Both named plaintiffs in the

Underlying California Action are California residents.  *Id.*  The Underlying California Action

alleges various forms of copyright infringement and plagiarism that are covered under Plaintiff

Insurers' Policies.  *Id.*

Named as Defendants in the California Underlying Action are the New World

Entities, New World Television Productions, Inc. and New World Entertainment Ltd.  *Id.*  Also

named in the California Underlying Action are Twentieth Century Fox Film Corporation ("Fox

Film") and Twentieth Century Fox International Television Inc. ("Fox International")

(collectively, the "Fox Entities").  *Id.*  Fox Film is a Delaware Corporation having its principal

office at 10201 West Pico Boulevard, Los Angeles, California.  Fox International is a New York

corporation, having its principal office at 10201 West Pico Boulevard, Los Angeles, California.

*Id.* at ¶¶ 12-13.  Fox Entertainment Group, Inc. ("Fox Entertainment"), is not named as a

defendant in the Underlying California Action.

5.    <u>**Notice**</u>

The Fox Risk Management Office in Los Angeles provided notice of the Underlying California Action to Wausau and National Casualty on May 17, 2005.  *See* Kender Decl., Ex. G.  Notice was sent to MediaPro at 2 Pershing Square, Suite 800, Kansas City, Kansas.  *Id.*[3]  The notice letter seeks coverage on behalf of the New World Entities and the Fox Entities.  Fox Entertainment, who was not named as a defendant in the Underlying California Action, has not sought insurance from Wausau and National Casualty.

*After* the New York Coverage Action was filed (*see infra*), on March 2, 2006, Wausau and National Casualty, sent a letter denying coverage for the Underlying California Action.  *See* Kender Decl., Ex. H.  The Plaintiff Insurers wrongly asserted that they had not received timely notice and that the Fox Entities were not proper insureds under the policies.  *Id.*  Wausau and National Casualty waited another eight days to serve the Fox Entities with their New York complaint.  *Id.*

6.    <u>**The Insurance Coverage Dispute**</u>

a.    <u>**The New York Action**</u>

On February 28, 2006, without having responded directly to Defendants' request for coverage for the Underlying California Action, without having denied coverage, and in an effort to deprive Defendants of a California forum, the Plaintiff Insurers filed this action for declaratory relief in the Southern District of New York ("New York Coverage Action").  *See* Kender Decl., ¶ 22.  The Plaintiff Insurers did so notwithstanding the fact that *none* of the parties has its principal place of business in New York and that the insurance claims arose in California.  Although the New World Entities continue to exist, are named in the Underlying California Action, and have demanded coverage, the Plaintiff Insurers did not name them as defendants.

---

[3] The Policies provided for notice to be sent to an address in Kansas City, Missouri, which is where notice was sent.

The New York Coverage Action also improperly names as a defendant Fox Entertainment although Fox Entertainment is not a defendant in the Underlying California Action and has not demanded coverage. The Insurers' New York Coverage Action also inaccurately alleges that the Fox Entertainment principal place of business is in New York. *See* Compl. ¶ 12. In fact, Fox Entertainment's principal place of business is 10201 West Pico Boulevard, Los Angeles, California. *See* Kender Decl. ¶ 22. Plaintiffs' treatment of Fox Entertainment presumably is an attempt to improperly add a New York connection to this dispute.

In a further attempt to conceal the California connection, Plaintiff Insurers have failed to name the New World Entities as parties. They should be, and are, necessary parties to any action that seeks to resolve this coverage dispute. They are, however, located in California, and were located in California at the time the *Santa Barbara* television shows were made, when the alleged infringing activity occurred.

There is no mystery as to why Plaintiff Insurers named and mischaracterized one of the Defendants in its complaint (Fox Entertainment) and failed to name parties who should be joined (the New World entities). Plaintiffs simply want to take advantage of New York's law on late notice (Compl. ¶¶ 4, 5), which is the most pro-insurer law in the nation.

**b.      The California Coverage Action**

On March 24 2006, the New World Entities, Fox Film, and Fox International commenced the California Coverage Action, in their chosen forum, against Wausau and National Casualty. *See* Kender Decl. ¶ 35, Ex. I. All of the parties are doing business in California, and Wausau and National Casualty can be served in California. *See* Kender Decl. ¶ 12. The California Coverage Action seeks not only declaratory relief, but also breach of contract damages and bad faith damages. *See* Kender Decl., Ex. I. California is where the named underlying claimants reside. *See* Kender Decl., Ex. F, ¶¶ 7-8. California is where all of the

documents and the anticipated witnesses related to the Underlying California Action are located, including the defense counsel at Kirkland & Ellis LLP. *See* Kender Decl. ¶¶ 15-17. The fees of defense counsel are immediately at issue in the California Coverage Action, and Wausau and National Casualty may challenge the reasonableness of those defense costs. The witnesses on that issue are all located in California. *Id.* at ¶ 18. Moreover, any inquiry into the corporate history of the New World Companies, or the alleged infringing activity, will involve conduct that took place in California, where presumably documents and witnesses are located. *Id.* ¶ 11. Since the Risk Management Department handling the matter for the New World Entities and Fox Entities is located in California, any inquiry into the notification of the Plaintiff Insurers also will involve California witnesses and documents. *Id.* ¶¶ 20-21.

## <u>ARGUMENT</u>

**I.      THIS COURT SHOULD TRANSFER THIS ACTION TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

Pursuant to 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." A motion to transfer requires a two-part inquiry: (1) whether the case could have been brought in the proposed transferee district; and (2) whether, after consideration of certain factors, including the convenience of the parties and witnesses, and the interest of justice, the transfer is warranted. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004). As discussed below, both prongs of the requisite two-part inquiry weigh in favor of transferring this action to the Central District of California.

### A.      The New York Action Could Have Been Brought In The Central District Of California

The coverage dispute at issue in this litigation arises out of transactions and events that took place in California. Accordingly, this case could have been brought in the Central

8

District of California.  *See* 28 U.S.C. § 1391(a)(2) (venue is proper in district "in which a substantial part of the events or omissions giving rise to the claim occurred").  Moreover, both Wausau and National Casualty are licensed insurers in the State of California and, accordingly, are subject to personal jurisdiction in the Central District of California.  Kender Decl. ¶ 12. Therefore, the first requirement of 28 U.S.C. § 1404(a) is satisfied.

> **B.**     **The Balance Of Convenience And Interests Of Justice Weigh In Favor Of Transferring This Case To The Central District Of California**

Courts generally consider the following nine factors in deciding whether a transfer will enhance the convenience of the parties and the witnesses, and is in the interest of justice: (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of the relevant documents and relative ease of access to sources of proof; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) judicial economy and the interests of justice.  *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 285-86 (S.D.N.Y. 2004).  A review of these factors requires transfer in this case.

> **1.**     **The Convenience of the Witnesses Is Better Served in California**

The convenience of the witnesses, in most cases, is the paramount consideration in the analysis.  *Id.* at 286.  Defendants are unaware of any witnesses located in New York on any issue raised by the coverage dispute.  California is the location where all of the critical events occurred surrounding the allegedly infringing conduct, notice to the Plaintiff Insurers, and the defense of the Underlying California Action.  It is where witnesses on those issues are likely to

reside.[4]  *See* Kender Decl., ¶ 18.  Thus, it is likely that the convenience of witnesses is best served by transfer.

### 2.    Transfer to California Would Improve the Convenience to the Parties

Courts have found that transfer is appropriate when the plaintiff does not reside in the original district and the defendant seeks transfer to the district in which it is headquartered, reasoning that "such a transfer does not generally increase the inconvenience to the plaintiff but is much more convenient for the defendant."  *See Royal Ins. Co. of Am. v. Tower Records, Inc.*, No. 02 Civ. 2612 (PKL), 2002 WL 31385815, at *6 (S.D.N.Y. Oct. 22, 2002).  Plaintiffs are not New York corporations, nor do they maintain their principal places of business in New York. On the other hand, the New World Entities, Fox Film, and Fox International all maintain their principal places of business in California.  Accordingly, this factor weighs in favor of transfer.

### 3.    The Documents Generally Are Located in California

The fact that most of the relevant documents are located in California favors transfer of the action.  Indeed, courts have found that, despite technological advances that make transportation of documents easier, "common sense suggests that retaining this case in New York imposes some incrementally greater burden, however slight, on Defendants to copy or transport documents [from its California headquarters] that they would not incur if the case proceeded in California."  *Herbert*, 325 F. Supp. 2d at 289.  The largest set of documents likely to be involved in discovery are the pleadings, discovery, defense costs bills, and other documents related to the Underlying California Action.  These documents are all in defense counsel's office or at the Fox

---

[4] Although the placement of the policies involves some contacts with various other jurisdictions (Colorado and Georgia – where SCI and the Andrews Group were located; Wisconsin or Arizona – where Plaintiff Insurers are located; and Kansas or Missouri – where Plaintiff Insurers' claims handlers were located), there is no reason to believe that the testimony of witnesses from these States will be relevant to the actual coverage dispute.

DOCSNY.185892.3

Entities' headquarters in California.  *See* Kender Decl., ¶ 17.  Accordingly, this factor weighs in favor of transfer.

### 4.       The Locus of Operative Events Took Place in California

The events at issue took place in California.  Although the policies appear to have been delivered to the Named Insureds primarily in Georgia, they were written to insure against copyright and other claims relating to the production of television shows in California.  In at least one of the policies, New World Entertainment, a California corporation, is specifically listed as an insured.  *See* Kender Decl., Ex. C.  In at least two of the policies, a Notice regarding claims handling refers to regulatory guidelines established by the California Insurance Department.  *Id.* at Exs. D and E.  These facts all suggest that the parties intended that California law would govern.  Furthermore, the events relating to the underlying action giving rise to the insurance claim all arose in California, and notice was given from California.  In contrast, no "operative events" took place in New York.  Under this factor, the case should be transferred. *See Indian Harbor Ins. Co. v. Factory Mut. Ins. Co.*, No. 05 Civ. 2564 (PKL), 2005 WL 1994017, at *5 (S.D.N.Y. Aug. 17, 2005).

### 5.       The Insurers' Choice of Forum Is Entitled to No Deference

The Insurers' choice of this forum is not entitled to deference.  Although courts may accord significant weight to a plaintiff's choice of forum (s*ee Herbert*, 325 F. Supp. 2d at 291), "where, as here, the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts, in the case, this choice is considerably less important."  *Posven*, 303 F. Supp. 2d at 405.  As noted above, neither insurer resides in this district and the events took place in California.  It follows that the Insurers' choice of forum is not entitled to any weight.

6.      **The Forum's Familiarity with the Governing Law**

A federal court sitting in diversity is required to apply the choice-of-law rules of the jurisdiction in which it is located. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941); *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 419 (2d Cir. 2001). New York courts apply the "most significant relationship" test to determine choice of law. *See Am. Home Assurance Co. v. Merck & Co.*, 329 F. Supp. 2d 436, 443 (S.D.N.Y. 2004). Among the factors identified as important is the place of negotiation of the contract, the place of performance, the location of the risk, and the domicile or place of business of the parties. *Id.* Under this standard, California has the most significant relationship to the instant action, and New York law is not implicated. Courts have found that, when the proposed transferee court state's law applies, this factor supports transferring the action. *See, e.g.*, *Tower Records*, 2002 WL 31385815, at *7.

The location of the insured risk is California, where the Underlying California Action is pending, where the television show *Santa Barbara* was made, and where the allegedly wrongful acts occurred. California, of all other possible states, has the most significant contact with, and the most significant interest concerning, Plaintiffs' obligations to (1) defend the Underlying California Action, and (2) pay settlements or judgments arising out of the Underlying California Action. It is thus irrefutable that the "risk" sought to be "insured" is located entirely in California. Two of the policies even refer to claim-handling guidelines established by the California Insurance Department.

The application of California law is further supported by inquiry into the respective governmental interests, including the interest of the state where the principal risk is located in regulating conduct with respect to insured risks within its borders, and the interest of the state in regulating insurance companies doing business within its borders. *Fireman's Fund Ins. Co. v. Schuster Films, Inc.*, 811 F. Supp. 978, 984 (S.D.N.Y. 1993). These governmental interest factors also favor California.

12

Given that California law will govern this insurance dispute, there is no legitimate reason why the insurance coverage issues should proceed in this Court.  This New York Coverage Action is nothing more than an attempt to avoid application of California law through forum shopping and should, therefore, be dismissed as it will only result in duplicative litigation. A California court is better suited to determine issues of California state insurance law than a federal court sitting in New York.  *See, e.g.*, *Commercial Underwriters Ins. Co. v. Glowmaster Corp.*, 105 F. Supp. 2d 268, 270-71 (S.D.N.Y. 2000) ("*Glowmaster*"); *Am. Motorists Ins. Co. v. Glidden Co.*, ("*Glidden*"), 129 F. Supp. 2d 640, 641 (S.D.N.Y. 2001).

### 7.    Judicial Economy and the Interests of Justice

In addition to the nexus of the case, courts will consider the caseload of competing district courts when assessing whether to transfer a case.  *See, e.g.*, *Wyndham Assocs. v. Bintliff*, 398 F.2d 614, 619 (2d Cir. 1968).  The Central District of California can expeditiously resolve this matter, taking it to trial over a year sooner than would be possible in the Southern District of New York.  In fact, according to the Administrative Office of the United States Courts, cases in the Central District of California go to trial earlier than in the Southern District of New York. www.uscourts.gov/caseload2005/tables/C05mar05.pdf.  Additionally, the Southern District of New York has a backlog of several more thousand cases than the Central District of California. "Adjudication of this case in New York, as opposed to handling it at its origin, would add to administrative congestion and burden New York courts."  *Ins. Co. of N. Am. v. S/S Ro Ro Genova*, 661 F. Supp. 1578, 1581 (S.D.N.Y. 1987).  The comparison of the case load between Districts demonstrates that transferring this action to the Central District of California would serve the interests of judicial economy and justice.

13

C.     **The First-Filed Rule Does Not Apply In This Situation, Where Plaintiffs Filed An Anticipatory Declaratory Judgment Action In An Attempt To Tie This Case To An Illogical Forum**

While courts generally give first-filed actions priority over later-filed suits, that deference may be overcome by demonstrating special circumstances. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978). "Special circumstances exist where a party files a declaratory judgment action in anticipation of a coercive suit or where forum shopping alone motivated the choice of forum in the filing of the first suit." *Chi. Ins. Co. v. Holzer*, No. 00 Civ. 1062(SAS), 2000 WL 777907, at *2 (S.D.N.Y. June 16, 2000) (internal quotation marks and citation omitted). The purpose behind this exception is "to avoid rewarding parties attempting to use the declaratory judgment action in a 'race to the courthouse.'" *Id.* (quoting *800-Flowers, Inc. v Intercont'l Florist, Inc.*, 860 F. Supp. 128, 133 (S.D.N.Y. 1994)).

Under these principles, courts have dismissed preemptive declaratory judgment actions brought by insurers in favor of a policyholder's action for coercive relief. For example, in *Continental Insurance Cos. v. Wickes Cos.*, No. 90 Civ. 8215 (KMW), 1991 WL 183771, at *5 (S.D.N.Y. Sept. 6, 1991) ("*Wickes*"), the district court dismissed a first-filed declaratory judgment action brought by an insurer seeking to avoid coverage. The day after the insurer denied coverage, it commenced the declaratory judgment action in the Southern District of New York. *Id.* at *1. Two months later, the policyholder commenced an action in California state court against the insurer for breach of contract, breach of the duty of good faith, and a declaration that the insurer must defend and indemnify the policyholder. *Id.* On the policyholder's motion to dismiss or transfer the New York action, the district court departed from the first-filed rule. *Id.* at *5-*6. It reasoned that, "[b]y anticipating the possible filing of a suit by [the policyholder], [the insurer] reversed the usual roles of plaintiff and defendant and deprived [the policyholder,] the putative injured party, of its chance to have this dispute heard in the forum of its choice." *Id.* at *5. Thus, the district court found that the insurer caught the

14

policyholder "off guard by filing this action, 'winning a race to the courthouse which it had completed before its adversary heard the starting gun.'" *Id.* (quoting *Companion Life Ins. Co. v. Matthews*, 547 F. Supp. 836, 841 (S.D.N.Y. 1982)).[5]

Similarly, in *Security Insurance Co. of Hartford v. ITA Textiles Corp.*, No. 99 Civ. 10942 (MBM), 2000 WL 1576879, at *1 (S.D.N.Y. Oct. 23, 2000), after the insurer denied the claim, the policyholder's counsel sent a letter to the insurer requesting settlement discussions. The insurer responded that it was reviewing the claims and would respond at a later date. That same day, the insurer filed an action for declaratory relief in the Southern District of New York. Shortly thereafter, the policyholder filed suit in California state court. In ruling upon the policyholder's motion to transfer, the district court held that the insurer's "request for a declaratory judgment was an attempt to win the race to the courthouse." *Id.* at *5. Accordingly, the district court concluded that there was "no explanation for [the insurer's] rush to file this declaratory judgment action other than an attempt to secure its home forum." *Id.*

Here, the New York Coverage Action is an improper attempt to preempt the Fox Entities' choice of forum. Prior to sending their letter denying coverage, Plaintiff Insurers filed in the Southern District of New York. The Plaintiff Insurers admit that their reason for filing in this district, despite the absence of any significant connection to New York, is their desire to invoke the pro-insurance company New York law on late notice. *See* Compl. ¶¶ 4, 5. "Indeed, it is difficult to draw any conclusion from this set of facts other than that [the Insurers], upon deciding to deny coverage . . . , chose to launch a preemptive strike and ensure that any suit over

---

[5] *See also Gotham Ins. Co. v. Plant Maint. Serv. Co.*, No. 94 Civ. 1461 (WK), 1994 WL 714302, at *1 (S.D.N.Y. Dec. 22, 1994). In *Gotham*, two months after denying coverage, the insurer commenced the declaratory judgment action. *Id.* Two months later, the policyholder commenced an action for breach of contract in the Western District of Tennessee. *Id.* at *2. The district court found that the insurer's first-filed action for declaratory judgment was improper, as the insurer could reasonably expect "to have anticipated that [the policyholder] would soon be filing an action in support of the claim which it had rejected." *Id.* at *3. Accordingly, the court declined to exercise jurisdiction over the first-filed action. *Id.*

insured's claims would be tried in New York rather than California." *Wickes*, 1991 WL 183771, at *6. Accordingly, the case should be transferred to the United States District Court for the District of California.

**II.      THIS COURT SHOULD ABSTAIN FROM PROCEEDING WITH THIS ACTION AND SHOULD DISMISS OR STAY THE ACTION**

If this Court fails to transfer this action to the Central District of California, at the very least, it should either dismiss or stay the case under the doctrine of abstention, in light of the parallel California Coverage Action filed in State Court.

**A.      Standard For Abstention**

Federal courts have repeatedly abstained from hearing state-law-based actions under the Declaratory Judgment Act in deference to state court actions raising the same or similar issues. As the Supreme Court has stated: "'ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("*Wilton*") (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942) ("*Brillhart*")). Adopting the standards set forth in *Brillhart*, the Supreme Court in *Wilton* found that, in determining whether to abstain in favor of a state court action, federal courts should consider: (1) the scope of the pending state proceeding and the nature of defense available there; (2) whether the claims of all parties can satisfactorily be adjudicated in the state proceedings; (3) whether the necessary parties have been joined; and (4) whether such parties are amenable to process in the state proceeding. *Id.* at 283. To these *Brillhart* factors, the Supreme Court also added two more: (5) avoiding duplicative proceedings; and (6) the avoidance of forum shopping. *Id.*

DOCSNY.185892.3

**B.**     **Courts Typically Abstain From Hearing Federal Declaratory Judgment Actions Brought By Insurance Companies In Favor Of State Court Actions**

Significantly, in both *Wilton* and *Brillhart*, the Supreme Court upheld the district court's abstention in declaratory judgment actions brought by insurance companies in favor of state court actions brought by their policyholders.  For example, in *Wilton*, a $100 million verdict was entered against the policyholder in the underlying action.  *Id.* at 279.  Anticipating a coverage claim, the insurers commenced a declaratory judgment action in the United States District Court for the Southern District of Texas.  *Id.* at 280.  The parties agreed to a voluntary dismissal of that action after the policyholder promised to give the insurers two weeks' notice before filing any state court action.  *Id.*  When the policyholder gave such notice, the insurers re-filed their Texas federal court action.  *Id.*  One month later, the policyholder filed a breach of contract action in Texas state court and moved to dismiss or stay the federal action.  *Id.*  The district court stayed the federal action, which the Fifth Circuit affirmed.  *Id.* at 280-81.

On appeal in the Supreme Court, the insurers argued that the federal district court could abstain from hearing a declaratory judgment action in favor of a pending state action only if the case presented "exceptional circumstances."  *Id.* at 287.  The Supreme Court rejected that argument, holding that "district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites."  *Id.* at 282.[6]

Courts within this Circuit repeatedly have rejected attempts by insurance companies to preemptively file a federal declaratory judgment action in anticipation of the policyholder's

---

[6] Similarly, in *Brillhart*, a reinsurance company "jumped" into federal court when it appeared that it would be made party to garnishment proceedings relating to its insolvent policyholder. The district court dismissed the earlier-filed federal action, but the court of appeals reversed, holding that the district court's decision to abstain constituted an abuse of discretion.  The Supreme Court reversed the cost of appeal's decision, holding that the district court properly decided to abstain.  316 U.S. at 494-95.

state court action.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17 (2d Cir.

1997) ("*Karp*").  In *Winterthur International America Insurance Co. v. Pepsico, Inc.*, No. 01

CIV. 9132 (WK), 2002 WL 986566, at *1 (S.D.N.Y. May 13, 2002), following unsuccessful

settlement discussions, Winterthur commenced a federal declaratory judgment action seeking a

declaration that the property damage claims were not covered.  *Id.*  Shortly thereafter, Pepsico

filed a complaint in New York state court against Winterthur and the broker, alleging breach of

contract, declaratory judgment, estoppel, restitution, and, against the broker, negligence.  *Id.*  The

district court granted Pepsico's motion to abstain, finding that:  (1) the state action was more

comprehensive in scope because (a) all the parties had been joined; (b) the action sought more

than declaratory relief; and (2) the federal action involved state law issues only.  *Id.* at *3.

In *Glowmaster Corp.*, 105 F. Supp. 2d at 269, Commercial Underwriters commenced

a federal declaratory judgment action seeking a declaration that it had no duty to defend or

indemnify Glowmaster for product claims because Glowmaster allegedly had provided late

notice.  One month later, Glowmaster commenced an action in New Jersey state court, alleging

breach of the duty of good faith and fair dealing and seeking a declaratory judgment.  Thereafter,

Glowmaster moved to dismiss the federal declaratory judgment action, which the court granted.

The court reasoned that the New Jersey action was "a parallel proceeding involving the same

issues and the same parties.  The claims in both actions involve no questions of federal law, and

insurance regulation is a matter of particular concern to state governments."  *Id.* at 270.  The

district court also noted that Commercial Underwriters sought "to litigate this case in a federal

court in New York because it seeks a friendlier forum for its lack-of-notice defense."  *Id.*  The

district court found that, because Commercial Underwriters can raise its notice defense in the

New Jersey action, the existence of the late notice defense did not prevent the court from abstaining.  *Id.* at 270-71.[7]

     **C.**     **An Application Of The *Brillhart-Wilton* Factors Demonstrates That This Court Should Abstain From Hearing This Declaratory Judgment Action**

     Under the relevant *Brillhart-Wilton* factors, and case law in this district, this Court should abstain from hearing this declaratory judgment action in favor of the more comprehensive California Coverage Action pending in state court.

     **1.**     **Scope and Nature of the State Court Proceeding (Commonality of Issues)**

     The instant action and the California Coverage Action are parallel actions subject to the *Brillhart* abstention doctrine.  The Second Circuit has held that federal and state proceedings are "'parallel' for purposes of abstention when the two proceedings are essentially the same; that is, there is an identity of parties, and the issues and relief sought are the same."  *Karp*, 108 F.3d at 22.  In *Karp,* the court found two proceedings parallel where the issue of coverage raised in the declaratory relief action filed in federal court would be decided in the competing state action, and the parties to the insurance dispute were litigants in each action.  The Second Circuit agreed with the district court that the declaratory judgment claim "could better be settled in the state proceeding."  *Id.* at 22-23.

---

[7] Case law from this Circuit is replete with courts abstaining from hearing federal declaratory judgment brought by insurance companies in favor of parallel state court actions.  *See, e.g.*, *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Turbi de Angustia*, No. 05 Civ. 2068(DLC), 2005 WL 2044930 (S.D.N.Y. Aug. 23, 2005); *Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*, No. 02 Civ. 9800(WHP), 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004); *Gen. Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, Nos. 01 Civ. 11379, 11380, 11520, 11521, 2002 WL 850012 (S.D.N.Y. May 3, 2002), *aff'd*, 57 F. App'x 892 (2d Cir. 2003); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, No. 00 Civ 5007(NRB), 2001 WL 194903 (S.D.N.Y. Feb. 27, 2001); *Glidden*, 129 F. Supp. 2d 640; *Fed. Ins. Co. v. Safeskin Corp.*, No. 98 Civ. 2194(DC), 1998 WL 832706 (S.D.N.Y. Nov. 25, 1998); *Employers Ins. of Wausau v. El Paso Tenn. Pipeline Co.*, No. 98 Civ. 4612(JSR), 1998 WL 790937 (S.D.N.Y. Nov. 13, 1998); *Fireman's Fund Ins. Co. v. Chris-Craft Indus., Inc.*, 932 F. Supp. 618 (S.D.N.Y. 1996); *Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*, No. 94 Civ. 6971 (SS), 1996 WL 61763 (S.D.N.Y. Feb. 13, 1996).

DOCSNY.185892.3

Here, there is a commonality of issues and parties between the federal and state actions to render them parallel.  Both actions seek to resolve the rights and obligations of the parties to the same insurance contracts.  *See, e.g.*, *Reliance Ins. Co. of Ill. v. Multi-Fin. Sec. Corp.*, No. 94 Civ. 6971 (SS), 1996 WL 61763, at *3 (S.D.N.Y. Feb. 13, 1996) (noting that all claims and defenses arose out of language of insurance contract); *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 961 F. Supp. 652, 656-57 (S.D.N.Y. 1997) (observing that federal and state actions arose out of single event and involved same issues under insurance contract).  When faced with a commonality of issues similar to those present here, federal courts typically defer to the state court proceeding, as this Court should do here.

### 2.    Adjudication Of All Issues In Parallel State Proceeding

Any claims by the Plaintiffs can be litigated in the California state court proceeding by way of affirmative defenses or counterclaims.  *See, e.g.*, *Reliance,* 1996 WL 61763, at *3 ("Defending the state court action by necessity requires Reliance to raise as counterclaims or defenses the same claims it has raised in this declaratory judgment action."); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Warrantech Corp.*, No. 00 Civ. 5007(NRB), 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001) (noting that all issues presented in federal suit either have been or can be asserted as defenses to the third-party claims and/or counterclaims in that suit); *Fed. Ins. Co. v. Safeskin Corp.*, No. 98 Civ. 2194(DC), 1998 WL 832706, at *3 (S.D.N.Y. Nov. 25 1998) (declining to exercise jurisdiction because issues will be more than adequately presented in parallel state court proceeding); *Fireman's Fund Ins. Co. v. Chris-Craft Indus., Inc.*, 932 F. Supp. 618, 620 (S.D.N.Y. 1996) (observing that there exists no impediment to federal litigants' raising the same issues as defenses in the state court action).

Furthermore, the issues involved in each suit do not involve any issue of federal law, but purely those of state law.  Courts have recognized that insurance regulation is a matter of

20

particular concern to state governments and have, therefore, found that state courts are better suited to adjudicate such matters. *See Glowmaster*, 105 F. Supp. 2d at 270-71 (holding that inasmuch as the suit involved issues of insurance, a matter of state concern, the New Jersey state court was better suited to adjudicate it); *Glidden*, 129 F. Supp. 2d at 641 (finding that "the court best suited in every relevant respect to decide the issues in this case (none of which involve federal law) is the Ohio state judge").

Moreover, the scope of the California Coverage Action is broader than the declaratory judgment action brought in the Southern District of New York. The California Coverage Action involves all of the parties who seek coverage for the underlying claims, including the New World Entities under Plaintiffs' policies. Only the California Coverage Action can resolve the coverage issues as to all parties in interest without the risk of inconsistent rulings. *See Warrantech*, 2001 WL 194903, at *3 (finding action filed against multiple insurance companies broader than federal declaratory judgment action, supporting abstention). In *Chris-Craft*, 932 F. Supp. at 619, the policyholder sought defense and indemnity coverage from four primary insurance companies for environmental liability. One carrier, Fireman's Fund, filed a declaratory judgment action in the Southern District of New York. *Id.* Three days later, the policyholder brought a comprehensive breach of contract and declaratory judgment action in California state court against all four insurance carriers. *Id.* Pursuant to the discretionary standard set forth in *Wilton*, the court granted the policyholder's motion to dismiss or stay the federal action, because the state court action was broader than the federal action brought by only one insurance company.

> The California action will determine the obligations of Fireman's Fund and three other insurers to defend and indemnify Chris-Craft in the underlying actions. The action before this Court will decide the identical question raised in the California action. Both parties are amenable to process in California and the Court sees no reason why the claims of all

> parties in interest . . . cannot be satisfactorily adjudicated in that
> proceeding.

*Id.* at 620.  The same is true of the instant proceedings.

### 3.     Whether Necessary Parties Have Been Joined

This Court should abstain from hearing this action because necessary parties, the New World Entities, have not been joined.  Under Federal Rule of Civil Procedure 19(a), a party is necessary if:

> (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) [A] the person claims an interest relating to the subject of the action and [B] is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

*Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 48 (2d Cir. 1996).  Thus, in *Konover Construction Corp. v. Royal Indemnity Co.*, 399 F. Supp. 2d 130, 131 (D. Conn. 2005), the plaintiff commenced a federal declaratory judgment action against two insurers seeking coverage for a construction accident under a policy purchased by a subcontractor hired by the plaintiff.  The insurers commenced a state court action against the plaintiff and the subcontractor and moved to dismiss the federal action.  *Id.*  The court granted the motion to dismiss, finding, *inter alia*, that whether the subcontractor was "an 'indispensable' party or only merely 'necessary,' it makes much more sense to resolve these issues in a forum in which all parties with an interest may participate."  *Id.* at 132.

Here, there is no dispute that the New World Entities have an interest in the insurance coverage and that their absence leaves a risk of inconsistent obligations.  Therefore, they are necessary parties.  Accordingly, this Court should defer to the California Coverage Action, in which the New World Entities are parties, so that the issues of coverage can be resolved in an action in which all interested parties have been joined.

4.     **Amenability To Process**

All of the parties to this action are amenable to process in the California State Court

Action.  Thus, this factor also weighs in favor of abstention.

5.     **Avoiding Duplicative Or Piecemeal Proceedings**

It would be a waste of judicial economy and resources for this Court to resolve claims

presenting issues of California law that currently are before the California state court, not to

mention the possibility of inconsistent results.  This is particularly true given the fact that the

California Coverage Action involves additional parties.  *See General Star*, 2002 WL 850012, at

*7 (finding of "central importance" the fact that several insurers were not parties to the federal

declaratory action and were parties to the state court action).

In *Arkwright-Boston Manufacturers Mutual Insurance Co. v. City of New York*, 762

F.2d 205, 211 (2d Cir. 1985), the Second Circuit instructed that the danger of piecemeal

litigation was a paramount factor favoring abstention.

> If the federal court refuses to abstain, it will force defendants to defend
> this complex litigation on two fronts.  Further, inconsistent disposition of
> these claims between two concurrent forums would breed additional
> litigation on assertions of claim and issue preclusion.  This could burden
> the parties for years to come.  "The existence of such concurrent
> proceedings creates the serious potential for spawning an unseemly and
> destructive race to see which forum can resolve the same issues first which
> would be prejudicial, to say the least, to the possibility of reasoned
> decision-making by either forum." *Arizona v. San Carlos Apache Tribe*,
> 463 U.S. 545, 567-68 (1983). . . .  Maintaining virtually identical suits in
> two forums under these circumstances would waste judicial resources and
> invite duplicative effort.  Plainly, avoidance of piecemeal litigation is *best
> served by leaving these suits in the state court.*

*Id.* (emphasis added).  Because judicial economy will best be served if all issues regarding the

applicability of the various insurance policies are determined in one action, abstention is proper.

6.     **Avoidance Of Forum Shopping**

The filing of this federal action in New York by Plaintiffs is nothing more than an

attempt to obtain application of New York law.  *See Employers Ins. of Wausau v. El Paso Tenn.*

23

*Pipeline Co.*, No. 98 Civ. 4612(JSR), 1998 WL 790937, at *4 (S.D.N.Y. Nov. 13, 1998) (dismissing federal action and admonishing federal plaintiff for attempting to circumvent existing state court proceeding through forum shopping).  Virtually all of the activity related to the alleged wrongful acts occurred in California; the underlying case is pending in California; and Defendants' principal places of business are in California.  Policyholders are the true "plaintiffs" in coverage litigation and their claims should be given precedence over a declaratory judgment action brought by an insurer.  *See Safeskin*, 1998 WL 832706, at *1 ("Safeskin is the 'true' plaintiff and the various insurance companies are the 'true' defendants.").

This Court should abstain from adjudicating the New York Coverage Action.

### 7.    Relative Convenience Of The Fora

California is not only a convenient forum but is, in fact, the most convenient forum for this insurance action because the underlying claims are pending there and California law will apply.  California is where the alleged wrongful acts occurred and is where Defendants have their principal place of business.  Most of the witnesses and documents are located in California.  In contrast, none of the parties or events have any significant connection to New York.  Defendants are Wisconsin entities with their principal place of business in Wisconsin or Arizona.  New York is a much less convenient forum than California.

### 8.    Order Of Filing

Numerous courts have held that the first-filed rule is of little importance when the matters are both filed in a narrow timeframe.  *See Wilton*, 515 U.S. at 277; *Warrantech*, 2001 WL 194903, at *4; *Glowmaster Corp.*, 105 F. Supp. 2d at 270.  This Action was filed on February 28 and served on March 9, 2006.  The California Coverage Action was filed on March 24, 2006.

DOCSNY.185892.3

9.    <u>**Choice Of Law**</u>

As shown above, California law will apply to the issues involving the insurance dispute over coverage for the Underlying California Claims.  Therefore, this Court should invoke its discretion to abstain from entertaining this action and should dismiss this action in favor of the California state court proceeding, which ultimately will resolve all issues presented herein.

III.    **NO CASE OR CONTROVERSY EXISTS BETWEEN THE INSURERS AND FOX ENTERTAINMENT, AND, THEREFORE, THE CLAIM AGAINST FOX ENTERTAINMENT SHOULD BE DISMISSED**

This Court can entertain a declaratory judgment action only:  (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.  *Cont'l Cas. Co. v. Coastal Sav. Bank*, 977 F.2d 734, 737 (2d Cir. 1992).  Fox Entertainment has not been sued in the Underlying California Action and has not sought coverage under Plaintiffs' policies.  Accordingly, the Complaint fails to allege an actual "case or controversy" against Fox Entertainment, as required under Article III, Section 2 of the U.S. Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201.

In *National Union Fire Insurance Co. of Pittsburgh, PA v. BP Amoco P.L.C.*, 319 F. Supp. 2d 352, 356 (S.D.N.Y. 2004), National Union, the insurer, sought a declaratory judgment against BP Amoco, its subsidiaries, and affiliates – joint-venturers for various oil and gas projects.  National Union also named "present and former BP entities and other business entities allegedly related to BP, but which claim no interest, either as participant or owner, in any declared project and do not claim to be insured" under the policy.  *Id.* at 357.  The district court found that, because these defendants agreed that the policy did not insure them,  there was no case or controversy that existed for the district court to adjudicate.  *Id.* at 371-72.  Thus, the district court dismissed these defendants from the action.  *Id.* at 373.

25

Here, there is no case or controversy between the Insurers and Fox Entertainment. Accordingly, any claim against Fox Entertainment should be dismissed.

## CONCLUSION

For the reasons set forth above, this Court should transfer this action to the Central District of California under 28 U.S.C. 1404(a).  Alternatively, this Court should abstain from deciding this case and either dismiss or stay under Federal Rule of Civil Procedure 12(b)(1) and (3) and the abstention doctrine in favor of the state court action presently pending in California. Finally, this Court should dismiss Fox Entertainment from this under Federal Rule of Civil Procedure 12(b)(6).

Dated:          New York, New York
                March 28, 2006

                                Respectfully Submitted,

                                DICKSTEIN SHAPIRO MORIN
                                  & OSHINSKY LLP


                                By:        /s Andrew N. Bourne
                                    Randy Paar (RP-5106)
                                    Andrew N. Bourne (AB-9774)
                                    1177 Avenue of the Americas
                                    New York, New York 10036
                                    Tel: (212) 835-1400
                                    Fax: (212) 997-9880

                                    *Attorneys for Defendants*
                                    *Fox Entertainment Group, Inc.; Twentieth Century*
                                    *Fox Film Corporation; and Twentieth Century Fox*
                                    *International Television, Inc.*

Of Counsel:
      Kirk Pasich, Esq.

26